NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

TERRY LEE HAVER, *Appellant*.

No. 1 CA-CR 16-0419
FILED 12-19-2017

Appeal from the Superior Court in Maricopa County
No. CR2011-005364-001
The Honorable George H. Foster, Jr., Judge

**AFFIRMED IN PART; REMANDED IN PART**

COUNSEL

The Arizona Attorney General's Office, Phoenix
By Gracynthia Claw
*Counsel for Appellee*

The Maricopa Public Defender's Office, Phoenix
By Tennie B. Martin, Christopher Johns
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Jon W. Thompson delivered the decision of the Court, in which Presiding Judge Kenton D. Jones and Retired Judge Thomas C. Kleinschmidt[1] joined.

---

**T H O M P S O N**, Judge:

¶1        Terry Lee Haver (appellant) appeals from his convictions on six counts of theft and five counts of forgery.  Finding no error, we affirm in part, and remand in part.

### FACTUAL AND PROCEDURAL HISTORY

¶2        Appellant was the owner of a general contracting company hired to build an additional wing onto a hotel project for client World Travel Inns (client).  In order to be paid, appellant had to submit monthly fee applications and lien waivers from various subcontractors.  Each pay application required certification that appellant's company would, and did, use the disbursed money to pay the subcontractors in a full and timely manner.

¶3        Over time, the bank that was processing the applications became suspicious that the work being billed for was either not done and/or the subcontractors invoices and waivers were being forged. Subcontractors were complaining to the client and the building superintendent that they were not being paid or were being underpaid. The architect noticed discrepancies between the work that was billed as completed and work that was actually completed. The bank ultimately instituted a dual-check system to insure subcontractors got paid.

¶4        Not long thereafter, appellant approached the client asking for additional retainage funds to be released to him, even though the project was not done. Appellant advised the client that without the

---

[1]        The Honorable Thomas C. Kleinshmidt, Retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article 6, Section 3, of the Arizona Constitution.

additional monies he would have to file bankruptcy. Appellant next demanded $100,000 from the client or told the client he could not finish the building. Within a couple of days of the client's denial of that request, appellant walked off the job. Neither the client or most of the subcontractors heard from him again. Appellant moved to Indiana.

¶5 Appellant received thirteen disbursements totaling in excess of two million dollars. An investigation put the amount of unaccounted for money, between what appellant said he paid the contractors and what he actually paid, at $528,595.18. Appellant later admitted to the police that he had used some of the money to pay subcontractors on other jobs and that he had signed some of the lien waivers. In testifying, he again admitted he had used some of the disbursed money to pay subcontractors on other jobs, but indicated those payments would have been out of his profits on the hotel job.

¶6 This matter was designated a complex case. Over one hundred exhibits were introduced into evidence and testimony was taken from over a dozen witnesses. Appellant testified, for four days, in his own defense.[2]

¶7 After a fourteen-day jury trial, appellant was convicted of theft against the client, and theft and forgery as to each of the five impacted subcontractors. Appellant was sentenced to concurrent sentences of: five years for Counts 1 (theft) and 2 (theft), 7.5 years for Counts 3 (theft) and 4 (theft), 6.5 years for Count 6 (theft), 1.75 years for Count 7 (theft), and 4.5 years each on the remaining 5 forgery counts. Appellant was given 65 days' presentence incarceration credit. Appellant timely appealed.

## DISCUSSION

¶8 On appeal, appellant asserts two claims. First, appellant claims that the trial court erred in giving a flight or concealment instruction over his objection. Appellant argues that he merely closed the business and returned to Indiana where he retained a residence and where there was an opportunity for construction work. He maintains that there was insufficient evidence in the record to warrant a flight or concealment instruction, that such an instruction was unfairly prejudicial, and that it permitted the jury to wrongly consider his move as

---

[2] Five additional counts had been dismissed.

consciousness of guilt. We review the trial court's decision to give a jury instruction for an abuse of discretion. *State v. Parker*, 231 Ariz. 391, 409, ¶ 44 (2013).

¶9        The jury instruction read:

> In determining whether the State has proved the defendant guilty beyond a reasonable doubt, you may consider any evidence of the defendant's running away, hiding, or concealing evidence, together with all the other evidence in the case . . . Running away, hiding, or concealing evidence after a crime [] does not by itself prove guilt.

¶10        It was undisputed that appellant left the jurisdiction, despite being the general contractor in a project underway. He left the job without giving notice to the client or the subcontractors. It was undisputed that after failing to obtain additional funds from the client, he never again had contact with the client or most of the subcontractors. He did not leave them additional contact information.

¶11        The trial court gave appellant's counsel the opportunity to address the instruction before the jury. He said:

> this instruction is really completely inapplicable in this case. You heard testimony that because of what happened with the Sahuaro Group project, or I'm sorry, the SpringHill Suites project, the Sahuaro Group had to close their doors, they closed business, Lee moved back to Indiana where he was from. He didn't take off and move to Mexico. He didn't just turn off all his phones and leave. He had forwarding addresses, he still had the same phone number or presumably an easy enough phone number to find. Detective Bermudez called him up. He did not run away, hide, or conceal evidence in this case. This instruction is just completely inapplicable to the facts of this case.

We agree with the state that the evidence of guilt was such that even had the instruction been erroneous, that the convictions could be maintained as the error was harmless. *State v. Solis*, 236 Ariz. 285, 287-88, ¶¶ 13-14 (App. 2014) (citing *State v. Valverde*, 220 Ariz. 582, 586, ¶ 16 (2009) (flight instruction did not contribute to or affect the verdict)). For these reasons, the trial court is affirmed.

¶12         As to the second issue, presentence incarceration credit, the state concedes that appellant should have received credit at least for the time he spent in jail in Indiana and that the trial court failed to give him that credit. This matter is remanded to the trial court for a recalculation of presentence incarceration credit.

## CONCLUSION

¶13         For the above stated reasons, appellant's convictions and sentences are affirmed. This matter is remanded to the trial court for recalculation of appellant's presentence incarceration credit.



AMY M. WOOD • Clerk of the Court
FILED:  AA